✓ FILED ___ ENTERED
____ LOGGED _____ RECEIVED

3:51 pm, Oct 23 2023

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

JTW: 10.18.23



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | | |
|---|---|---|---|
| *Kenneth S. Clark*<br>*Assistant United States Attorney*<br>*Kenneth.Clark@usdoj.gov* | *Mailing Address:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street, 5th Floor*<br>*Baltimore, MD 21201* | *DIRECT: 410-209-4959*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0717* |

October 18, 2023

David W. Fischer, Esq.
Fischer & Putzi, P.A.
Empire Towers, Suite #300
7310 Gov. Ritchie Hwy.
Glen Burnie, MD 21061

   Re: <u>United States v. Sean Weston</u>
     Crim. No. GLR-19-0318

Dear Counsel:

   This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Sean Weston (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by October 20, 2023, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offenses of Conviction

   1. The Defendant agrees to plead guilty to Count One and Count Twelve of the pending Fourth Superseding Indictment, which charge the Defendant with Conspiracy to Import, Transport, and Sell Drug Paraphernalia, in violation of 21 U.S.C. § 846, and Tax Evasion, in violation of 26 U.S.C. § 7201. The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

Elements of the Offenses

   2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

<u>Count One</u>

   First, that an agreement existed between two or more people to import, transport and sell drug paraphernalia, in violation of Title 21, United States Code, Section 863; and

   Second, that the Defendant willingly entered into that agreement.

<u>Count Twelve</u>

First, that on or about April 18, 2018, the Defendant owed a substantial income tax for the calendar year 2017;

Second, the Defendant attempted to evade and defeat the assessment of income tax due and owing for the calendar year 2017 by committed an affirmative act constituting tax evasion; and

Third, the Defendant acted willfully.

### Penalties

3.      The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 1 | 21 U.S.C. § 846 | N/A | 3 years | 1 year | $250,000 | $100 |
| 12 | 26 U.S.C. § 7201 | N/A | 5 years | 3 years | $250,000 | $100 |

a.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is

Rev. August 2018

2

nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the

Rev. August 2018

3

charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

Rev. August 2018

4

a.      Count One -- The parties stipulate and agree that base offense level for Count One is agreed to be 12, pursuant to U.S.S.G. § 2D1.7(a).

b.      Count Twelve -- The parties stipulate and agree that U.S.S.G. §§ 2T1.1 and 2T4.1 apply to Count Twelve, resulting in an offense level of 14 because the reasonably foreseeable tax loss associated with the Defendant's tax offense was between $40,000 and $100,000.

c.      The parties stipulate and agree that the offense level for Count Twelve is increased by 2 levels because the Defendant failed to report or to correctly identify the source of income exceeding $10,000 in 2016 from criminal activity. As a result, the adjusted offense level for Count Twelve is 16.

d.      Grouping – Pursuant to 3D1.2, Counts One and Twelve will not group.  Because the offense level for Count One is four (4) levels less than Count Twelve, there are a total of two units, pursuant to 3D1.4(a) and the total offense level is increased by two levels.  Thus the offense level will be eighteen (18).

e.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct.  This Office will not make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty.  This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

f.      The parties anticipate that, in November 2023, the U.S. Sentencing Guidelines will be amended to provide for an additional 2-level reduction in offense level if the Defendant meets the requirements of the amended § 4C1.1(a) (Adjustment for Certain Zero-Point Offenders).

If that provision applies, the anticipated final offense level is 14.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

Rev. August 2018

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11(c)(1)(C) Plea

9.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **15 months of imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

### Obligations of the Parties

10.     At the time of sentencing, the parties shall recommend a sentence of **15 months of imprisonment**. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant..

### Waiver of Appeal

11.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent that such challenges legally can be waived.

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742, or otherwise, to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional

challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

        c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Tax Liability & Restitution

       11.     Pursuant to 18 U.S.C. § 3663(a)(3), the Defendant agrees in connection with his offense to make restitution to the Internal Revenue Service (hereinafter "IRS") for taxes due and owing for Sean Weston (the Defendant) for tax years 2016 through 2018, plus interest that will have accrued on that amount as measured from the date that each tax liability constituting that amount initially became due and owing to the IRS up to and including the date of sentencing. The Defendant acknowledges and agrees that this restitution does not legally bind or foreclose separate administrative or civil claims by the IRS related to the conduct that is the subject of this plea agreement. The parties agree that this agreement, and any payment under this agreement, will not constitute a settlement, waiver, or release by the IRS of any civil or administrative rights or remedies it may have against the Defendant. If the Court orders the Defendant to pay restitution to the IRS for the failure to pay tax, either directly or indirectly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. See 26 U.S.C. Section 6201(a)(4). The Defendant concedes that he does not have the right to challenge the amount of this assessment. See id. Neither the existence of a restitution payment schedule nor the Defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. Section 6331.

       12.     The Defendant understands that this agreement does not resolve any civil tax liability that he may have, and that this agreement is with the United States Attorney's Office, not with the IRS. The IRS is not a party to this agreement and remains free to pursue any and all lawful remedies it may have. The Defendant agrees to cooperate fully with the IRS in the determination of his tax liability and the tax liability of any business that he has owned or controlled, and specifically agrees:

        a.     that nothing in this agreement forecloses or limits the ability of the IRS to examine and make adjustments to the Defendant's returns after they are filed;

        b.     that the Defendant is liable for the civil fraud penalty imposed by 26 U.S.C. Section 6651(f) with respect to the tax due and owing for the years 2016-2018; and

        c.     that the contents of any criminal file pertaining to his conduct maintained by the Criminal Investigation Division of the IRS and/or the U.S. Attorney's Office/Department of Justice may be given to civil attorneys, agents and support staff of the IRS to enable them to investigate any and all civil taxes and penalties that may be due and owing by the Defendant and

any entity formed or controlled by the Defendant. To the extent necessary to effect such disclosure, the Defendant waives any rights he may have pursuant to 26 U.S.C. Sections 6103(h)(4), 7213, and Federal Rule of Criminal Procedure Section 6(e).

## Collection of Financial Obligations

13.     The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. If restitution is not paid by the date of sentencing, in order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. If restitution is not paid by the date of sentencing, the Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that any financial statement and disclosures the Defendant submits will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and up to $250,000 fine.

## Defendant's Conduct Prior to Sentencing and Breach

14.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

15.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement.

## Court Not a Party

16.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court, and the Court is under no obligation to accept this plea agreement.

Rev. August 2018

8

In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw the plea. If the Defendant persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, the Defendant's attorney, nor the Court can make a binding prediction or promise that the Court will accept this Agreement. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

17.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Kenneth S. Clark
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10-19-22
Date

Sean Weston

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

Rev. August 2018

10 / 19 / 23

Date

David Fischer, Esq.

Rev. August 2018

## **ATTACHMENT A**

## **STIPULATION OF FACTS**

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant's Tax Offenses

From at least 2016 through 2017, the Defendant was a Form W-2 employee of a water treatment facility, earning wages of $50,918 and $13,808 for 2016 and 2017, respectively. For tax years 2016 through 2018, the Defendant failed to file income tax returns with the Internal Revenue Service ("IRS").

From at least 2016 through 2018, the Defendant owned the North West Variety Store, located at 1338 W. North Avenue, Baltimore, Maryland. During the calendar years 2016 through 2018, the Northwest Variety Store had significant profits that represented income on which the Defendant owed significant taxes to the United States. In order to conceal this income from the IRS, the Defendant conducted his finances substantially in cash. For example, from 2016 through 2018, the Defendant used $29,835 in U.S. currency to pay the monthly rent for the North West Variety Store. Moreover, during 2016 through 2018, the Defendant deposited $352,026 in U.S. currency into two personal bank accounts.

On August 4, 2016, the Defendant used $25,000 in U.S. currency to make a down payment on the purchase of a 2013 Bentley Continental GT with a fair market value exceeding $117,000. On the same day, the Defendant signed a credit application stating that his annual income was $180,000.

On May 15, 2017, the Defendant used $15,000 in U.S. currency to make a down payment on a lease of a 2014 Bentley Flying Spur with a fair market value exceeding $139,000. To obtain the lease, the Defendant asked Individual 1 to prepare a 2016 Form 1040, U.S. Individual Income Tax Return, for the Defendant. Individual 1 prepared the tax return based on information obtained from the Defendant. The 2016 Form 1040 reflected adjusted gross income of $358,984. The Defendant did not file this tax return with the IRS, but instead submitted it to a car dealership.

For the tax years 2016 through 2018, when Weston was a resident of Maryland, he willfully attempted to evade and defeat tax due and owing to the United States for each calendar year by receiving taxable income upon which there was tax due and owing to the United States, by failing make an income tax return by the tax deadline set by the IRS each year, by failing to pay the tax due and owing to the IRS, and by dealing substantially in cash to conceal his income. As a result, the Defendant caused a tax loss to the United States exceeding $98,000 for those tax years.

The figures on the following chart accurately reflect his unreported gross income, taxable income, and tax due and owing to the United States for tax years 2016 through 2018:

|  | 2016 | 2017 | 2018 |
|---|---|---|---|
| Unreported Gross Income | $155,920 | $185,562 | $116,775 |
| Taxable Income | $101,384 | $149,074 | $86,232 |
| Income Tax | $18,429 | $29,279 | $9,912 |
| Self-employment Tax | $9,759 | $19,842 | $14,614 |
| Less: Withholdings and Credits | ($2,702) | ($1,000) | ($56) |
| Tax Due and Owing | $25,486 | $48,121 | $24,470 |

The Defendant's Involvement With Drug Paraphernalia and Illegal Importation

From January 2015 through at least July 2019, the Defendant conspired with others to sell or offer for sale drug paraphernalia, and to use the mails or any other facility of interstate commerce to transport and import drug paraphernalia. During that time, the Defendant operated the Northwest Variety store, in Baltimore, Maryland. Among other items, the Northwest Variety Store sold empty gel capsules, colored plastic tops, dust masks, metal strainers, electric weighing scales, razor blades, mannite, and quinine. In March 2019, law enforcement lawfully seized 670 mannite bars, various packaging material, black scales, bands for currency, razor blades, metal strainers, ledgers reflecting customer purchases from the store, and a loaded shotgun from the Northwest Variety store. On July 17, 2019, law enforcement lawfully seized bulk quantities of empty gel capsules, thousands of different colored glass vial tops, quinine addressed to the Defendant, $13,800 in cash, several pieces of expensive jewelry, five firearms, and ammunition.

Between 2015 and 2019, the Defendant knowingly and willfully purchased hundreds of kilograms of quinine from China. Quinine's only approved use is a prescription medication for the treatment of uncomplicated malaria. Importation of quinine for any other use is illegal. It is banned as an over-the-counter medication and has been since 2006. The Defendant agrees that the quinine he was importing, purchasing, and selling constitutes drug paraphernalia under 18 U.S.C. § 863. In 2015, to accomplish his illegal importation of quinine, the Defendant -- while located in Maryland -- communicated with his foreign supplier of the quinine, requesting that the quinine should not be labelled as quinine and instead be labelled as "beta glucan." In February 2016, the government sent one of the packages of quinine back to China because it was discovered to be quinine. The Defendant continued to order quinine from this foreign supplier after this date and into 2019 and continued to request that it be shipped with a label as something other than quinine.

SO STIPULATED:

_____
Kenneth S. Clark
Assistant United States Attorney

10/23/19

_____
Sean Weston
Defendant

10/19/23

David Fischer, Esq.
Counsel for Defendant